UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZARA NORTHOVER,

      Plaintiff,                            Case No. 24-cv-11265
                                               Hon.  Shalina D. Kumar
v.                                       Mag.  Kimberly G. Altman

ROCKET MORTGAGE, LLC,

      Defendant.

_____/

**DEFENDANT, ROCKET MORTGAGE, LLC'S,**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant, Rocket Mortgage, LLC ("**Rocket Mortgage**"), by and through its attorneys, Morganroth & Morganroth, PLLC, hereby moves for summary judgment in its favor as to all claims asserted in Plaintiff, Zara Northover's ("**Northover**"), First Amended Complaint pursuant to Rule 56 based upon the facts, authority, and arguments set forth in the accompanying Brief in Support.

Counsel for Rocket Mortgage held a telephone conference with Northover's counsel to explain the nature of this Motion and seek concurrence in the relief sought in accordance with Local Rule 7.1(a). Northover's counsel did not concur.

WHEREFORE, Rocket Mortgage respectfully requests that the Court GRANT Court GRANT this Motion and enter a final judgment in favor of Rocket Mortgage.

<div style="margin-left: 40%;">

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

/s/ Jeffrey M. Thomson
JEFFREY B. MORGANROTH (P41670)
JEFFREY M. THOMSON (P72202)
PAMELA K. BURNESKI (P82039)
Attorneys for Defendant
344 N. Old Woodward Ave., Ste. 200
Birmingham, MI 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
jthomson@morganrothlaw.com
pburneski@morganrothlaw.com

</div>

Dated: January 8, 2026

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZARA NORTHOVER,

      Plaintiff,                              Case No. 24-cv-11265
                                              Hon.  Shalina D. Kumar
v.                                         Mag.  Kimberly G. Altman

ROCKET MORTGAGE, LLC,

      Defendant.

_____/

# BRIEF IN SUPPORT OF DEFENDANT, ROCKET MORTGAGE, LLC'S, <u>MOTION FOR SUMMARY JUDGMENT</u>

## **TABLE OF CONTENTS**

INDEX OF AUTHORITY ......................................................................... ii

STATEMENT OF ISSUES PRESENTED .............................................. vi

STATEMENT OF MOST CONTROLLING AUTHORITY ............................... vii

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF MATERIAL FACTS .................................................. 1

ARGUMENT ........................................................................................ 13

     I.     STANDARD OF REVIEW ............................................... 13

     II.    NORTHOVER'S § 1981 CLAIMS ARE TIME BARRED .............. 13

     III.   COLLATERAL ESTOPPEL AND RES JUDICATA ...................... 15

     IV.   NORTHOVER FAILED TO EXHAUST HER ADMINISTRATIVE
          REMEDIES AS REQUIRED BY TITLE VII ................................... 17

     V.    NORTHOVER'S RETALIATION AND DISCRIMINATION
          CLAIMS HAVE NO MERIT ........................................................... 18

          A. Northover Cannot Establish a Prima Facie Case of
             Discrimination ................................................................... 18

          B. Northover Cannot Establish a Prima Facie Case of Retaliation ... 20

          C. Northover's Poor Performance Justified all Alleged
             Adverse Actions ............................................................... 21

          D. Northover Cannot Establish Pretext .............................. 22

     VI.   NORTHOVER'S FMLA CLAIM HAS NO MERIT ........................ 23

CONCLUSION ..................................................................................... 25

i

# INDEX OF AUTHORITIES

**Cases**

*Adair v. Michigan*,
  470 Mich. 105 (2004) ........................................................................ vii, 16

*Allen Park Retirees Ass'n v. City of Allen Park*,
  329 Mich. App. 430; 942 N.W.2d 618 (2019) ............................................. vii, 16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...........................................................................13

*Bartlik v. United States DOL*,
  62 F.3d 163 (6th Cir. 1995) ..................................................................14

*Beard v. AAA of Mich.*,
  593 F. App'x 447 (6th Cir. 2014)...........................................................21

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986). ..........................................................................13

*Chai v. GM LLC*,
  2023 U.S. Dist.LEXIS 250284 (E.D. Mich. August 7, 2023)..............................23

*Chen v. Dow Chem. Co.*,
  580 F.3d 394 (6th Cir. 2009) ................................................................22

*Curtis v. State Farm Fire & Cas. Co.*,
  2014 U.S. Dist. LEXIS 114235 (E.D. Mich. August 18, 2014).........................14

*Dart v. Dart*,
  460 Mich. 573 (1999) .........................................................................16

*Ercegovich v. Goodyear Tire & Rubber Co.*,
  154 F.3d 344 (6th Cir. 1998)........................................................... vii, 19

*Hunt v. Thorp*,
  2024 U.S. App. LEXIS 6472 (6th Cir. 2004).............................................24

*Kremer v. Chem. Constr. Corp.,*
456 U.S. 461 (1982) ...................................................................... vii, 15

*Liebau v. Gossett,*
2023 U.S. Dist. LEXIS 34991 (E.D. Mich. March 2, 2023)........................ 19, 20

*Majewski v. Automatic Data Processing, Inc.,*
274 F.3d 1106 (6th Cir. 2001)...............................................................22

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ..........................................................................13

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ..........................................................................18

*McDonnell Douglas.*" *Clemons v. Hillshire Brands Co.,*
2024 U.S. App. LEXIS 8856 (6th Cir. 2024)...........................................25

*McKinnon v. L-3 Communications Corp.,*
814 F. App'x 35 (6th Cir. 2020)...........................................................21

*Montell v. Diversified Clinical Servs., Inc.,*
757 F.3d 497, 505 (6th Cir. 2014)........................................................21

*Morris v. Oldham County Fiscal Court,*
201 F.3d 784 (6th Cir. 2000) ........................................................ vii, 20

*Myers v. Western-Southern Life Ins. Co.,*
849 F.2d 259 (6th Cir. 1988) ..............................................................14

*Randolph v. Ohio Dep't of Youth Servs.,*
453 F.3d 724 (6th Cir. 2006) ..............................................................17

*Redlin v. Grosse Pointe Pub. Sch. Sys.,*
921 F.3d 599 (2019) .........................................................................24

*Risinger v. Ohio Bureau of Workers' Compensation,*
883 F.2d 475 (6th Cir. 1989)..............................................................18

*Russell v. Three Pillars, Inc.,*
   2022 U.S. App. LEXIS 3565 (6th Cir. February 7, 2022). .................................17

*Rust v. Quality Car Corral, Inc.,*
   614 F.2d 1118 (6th Cir. 1980) ...................................................................... vii, 14

*Schram v. United States,*
   1987 U.S. Dist. LEXIS 15786 (E.D. Mich. August 11, 1987)...........................15

*Seeger v. Cincinnati Bell Tel. Co.,*
   681 F.3d 274 (6th Cir. 2012) .............................................................................22

*Sevier v. Turner,*
   742 F.2d 262 (6th Cir. 1984) .............................................................................14

*State Farm Fire & Cas. Co. v. McGowan,*
   421 F.3d 433 (6th Cir. 2005) .............................................................................13

*Stransberry v. Air Wis. Airlines Corp.,*
   651 F.3d 482 (6th Cir. 2011) ...................................................................... viii, 21

*Tepper v. Potter,*
   505 F.3d 508 (6th Cir. 2007) ...................................................................... vii, 19

*Thurman v. DaimlerChrysler,*
   397 F.3d 352 (6th Cir. 2004) ...................................................................... vii, 14

*Tingle v. Arbors at Hilliard,*
   692 F.3d 523 (6th Cir. 2012) .............................................................................22

*White v. Baxter Healthcare Corp.,*
   533 F.3d 381 (2008) ................................................................................... viii, 22

*Wright v. Murray Guard, Inc.,*
   455 F.3d 702 (6th Cir. 2006) .............................................................................19

*Wyatt v. Nissan N. Am., Inc.,*
   999 F.3d 400 (6th Cir. 2021) .............................................................................22

iv

*Wysong v. Dow Chem. Co.*,
   503 F.3d 441 (6th Cir. 2007) ...................................................................24

*Younis v. Pinnacle Airlines, Inc.,*
   610 F.3d 359 (6th Cir. 2010) ........................................................ vii, 17

## Rules & Statutes

Fed. R. Civ. P.6 ........................................................................................14

Fed. R. Civ. P. 56 ................................................................................... vii

15 U.S.C. § 1640 .....................................................................................15

28 U.S.C. § 1738 .............................................................................. vii, 15

42 U.S.C. § 1981 ......................................................................... vi, 1, 13

## Other Authorities

29 C.F.R. § 1601 .....................................................................................17

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.  Whether the doctrines of res judicata and collateral estoppel bar Northover's claims because this lawsuit is duplicative of two prior state court lawsuits which have been resolved by final judgments fully vindicating Rocket Mortgage.

2.  Whether Northover's 42 U.S.C. § 1981 claims are barred by the 1-year limitations period in her employment agreement.

3.  Whether Northover adequately exhausted her administrative remedies as required by Title VII.

4.  Whether Rocket Mortgage is entitled to summary judgment because after having a full and fair opportunity to conduct discovery, Northover is unable to produce evidence to demonstrate a genuine issue of material fact for trial on any of her meritless claims.

## <u>STATEMENT OF MOST CONTROLLING AUTHORITY</u>

1.    Federal Rule of Civil Procedure 56;

2.    *Thurman v. DaimlerChrysler,* 397 F.3d 352, 358-359 (6th Cir. 2004) (limitations periods in employment agreement are enforceable as to Section 1981 retaliation and discrimination claims);

3.    *Rust v. Quality Car Corral, Inc.,* 614 F.2d 1118, 1119-1120 (6th Cir. 1980) ("Within 1 year" means 365 days beginning on and including the start date);

4.    *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 466 (1982) (Under 28 U.S.C. § 1738, courts "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.");

5.    *Adair v. Michigan*, 470 Mich. 105, 121 (2004) (elements of res judicata under Michigan law);

6.    *Allen Park Retirees Ass'n v. City of Allen Park*, 329 Mich. App. 430, 444-45 (2019) (elements of collateral estoppel under Michigan law);

7.    *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 361 (6th Cir. 2010) ("[A] Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge.");

8.    *Tepper v. Potter,* 505 F.3d 508, 515 (6th Cir. 2007) (elements of prima facie case of discrimination);

9.    *Ercegovich v. Goodyear Tire & Rubber Co.,*154 F.3d 344, 352-53 (6th Cir. 1998) (A plaintiff must show that "all of the *relevant* aspects of his employment situation were 'nearly identical' to" the alleged comparator's.);

10.   *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000) (elements of prima facie case of discrimination);

11. *Stransberry v. Air Wis. Airlines Corp.,* 651 F.3d 482, 488 (6th Cir. 2011) (Poor performance is a legitimate, non-discriminatory reason for an adverse employment decision.); and

12. *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 393 (2008) (To establish pretext, a plaintiff must show that "the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action.").

## PRELIMINARY STATEMENT

Plaintiff, Zara Northover ("Northover"), is a former team member[1] of Defendant, Rocket Mortgage, LLC ("Rocket Mortgage"), who has filed multiple lawsuits against Rocket Mortgage asserting meritless duplicative claims. In this lawsuit, Northover asserts meritless discrimination, retaliation, and FMLA claims. Rocket Mortgage is entitled to summary judgment for four independent reasons:

1. Res judicata and collateral estoppel bar Northover's claims because this lawsuit is duplicative of two prior state court lawsuits (*Northover I* and *II*) which have been resolved by final judgments fully vindicating Rocket Mortgage.

2. Northover's Employment Agreement contains a 1-year limitations period that bars her 42 U.S.C. § 1981 claims.

3. Northover's Title VII claims are barred because she failed to adequately exhaust her administrative remedies.

4. After having a full and fair opportunity to conduct discovery, Northover is unable to produce evidence to demonstrate a genuine issue of material fact for trial.

## STATEMENT OF MATERIAL FACTS

**Northover's Employment Agreement**

Northover's Employment Agreement contains a contractual limitations period stating that she "***must*** assert any claim against the Company or its current or former employees, officers, owners, or agents, ***within 1 year*** after [her] claim arises" and

---

[1] Rocket Mortgage refers to its employees as "team members."

providing that "failure to do so shall act as a bar to any claim that [she] may have." Ex. 1, pp. 3-4 (emph. added). Northover testified that Exhibit 1 was her Employment Agreement as of June 14, 2016, and acknowledged that she checked the box on it, which "is equivalent to a handwritten signature." Ex. 2, p. 72, ln 16 – p. 73, ln 1.

**Northover's Prior Lawsuits**

In *Northover I* and *II,* Northover alleged that she experienced racial harassment, racial discrimination, and retaliation while working at Rocket Mortgage starting in Fall 2020 while she was a Product Manager in the Capital Markets group. She claimed that Rocket Mortgage discriminated and retaliated against her by:

1. Dissolving her team in the Capital Markets group and eliminating her position;

2. Placing her in a position as a refinance mortgage banker, which she claimed was a $20,000 pay cut and demotion; and

3. Refusing to transfer her to a role as a purchase mortgage banker (for which she had prior experience and training). Ex. 3, pp. 2-3.

After the close of discovery, the Wayne County Circuit Court granted summary disposition in favor of Rocket Mortgage in *Northover I* because there was no genuine issue of fact for trial. Ex. 4. Thereafter, the Circuit Court granted summary disposition in *Northover II* on the pleadings because it raised the same issues that the Court had already considered and decided in *Northover I.* Ex. 5.

Northover appealed in *Northover II,* but not in *Northover I.* The Court of Appeals affirmed, finding that:

2

1. Northover was reassigned from her role in the Capital Markets group due to a departmental restructuring affecting approximately 50 team members—not in retaliation for any protected activity;

2. When Northover's team in the Capital Markets group was dissolved, she and her teammates were offered the choice between severance and one or two other roles, and Northover failed to show that she was offered lesser options or that her choice to accept the refinance mortgage banker role was a demotion with less compensation;

3. Rocket Mortgage's refusal to permit Northover to laterally transfer to a purchase mortgage banker role was not an adverse action;

4. Northover failed to show any "causal nexus" between any protected activity and an adverse employment action;

5. The res judicata and collateral estoppel effect of the *Northover I* final judgment barred Northover's claims in *Northover II*. Ex. 3, pp. 6-10.

**Northover's Poor Performance as a Mortgage Banker.**

In December 2021, Northover chose to accept a role as a refinance mortgage banker. Ex. 6, p. 1. Thereafter, Northover went through the process of reactivating her mortgage loan originator licenses (which are issued by each state). *Id.,* pp. 8-9.

Rocket Mortgage tracks mortgage banker performance using a variety of objective metrics. Ex. 7, p. 55, ln 21 – p. 56, ln 21; p. 67, ln 21 – p. 68, ln 10; p. 135, ln 15 - 24. Some metrics, such as time on the phone, leads contacted, and credit reports pulled, track a mortgage banker's effort. *Id.* Other metrics, such as loan applications received, loans closed, and "pace-to-goal" (a percentage equal to the number of loan applications received divided by the target number of loan

applications for a given month), measure a mortgage banker's production. *Id.* Mortgage bankers' target loan application goals are prorated for time off taken during the month. Ex. 8, p. 209, ln 2 – 9.

During the 13-month period from February 2022 through February 2023, Northover only met or exceeded her prorated monthly loan application goal once. Ex. 9. In nine of those months, Northover achieved 50% or less of her prorated loan application goal. *Id.* Her average monthly pace-to-goal was 47.41%. *Id.*

In December 2022, Northover received a production opportunity letter because her average pace-to-goal for October and November 2022 was in the bottom 10% of all mortgage bankers with the same specialty. Exs. 10-11. At that time, Northover's specialty was RME Refinance Rocket Science ("RME Refinance"). Ex. 11, p. 5. There were 15 mortgage bankers in that specialty, all reporting to Sonja Regish. Northover had the lowest pace-to-goal during October and November 2022 of the eligible bankers in her specialty. Ex. 12. ███████ was not eligible to receive a production opportunity letter in December 2022 because he had received a production opportunity letter in November 2022 and was separated for failing to clear that letter on December 16, 2022. Ex. 13, p. 68, ln 19 – p. 70, ln 15; Exs. 14-15. Northover's December 2022 production opportunity letter required her to achieve at least 50% of her prorated pace-to-goal to avoid separation, and at least 70% to avoid demotion. Ex. 16, p. 3. Northover achieved 80% pace-to-goal in

December 2022 and cleared the letter. Ex. 11, p. 5.

Effective January 2, 2023, Rocket Mortgage eliminated all reduced hour mortgage banking specialties as part of a larger organizational restructuring. Ex. 7, p. 174, ln. 25 – p. 180, ln 19. At that time, all RME Refinance bankers transitioned to normal refinance banking roles. *Id.*

In April 2023, Northover received a production opportunity letter because she fell within the bottom 10% of total closings of all mortgage bankers in her specialty for the months of February and March 2023. Ex. 17, p. 1; Ex. 18, p. 10; Ex. 19, p. 1. Northover claimed that it was unfair to compare her closings to normal refinance bankers because she had just transitioned out of the RME Refinance specialty. But, Rocket Mortgage analyzed the data and confirmed that the former RME Refinance bankers had similar closing numbers to normal refinance bankers and evaluated all former RME Refinance bankers the same way. Ex. 8, p. 196, ln 12 – p. 197, ln 22. ████████, another former RME Refinance banker who had one more closing than Northover, also received a production opportunity letter in April 2023. Ex. 20, pp. 2-3. Northover had the lowest number of closings of all former RME Refinance bankers in February and March 2023 eligible for the April 2023 production opportunity letter cycle. *Id.* See also, Exs. 12 and 18.

Northover also claimed that it was unfair for her to receive a production opportunity letter in April 2023 because she took nine days off for bereavement in

March 2023. However, according to Rocket Mortgage's production opportunity letter process, team members who take time off for bereavement are not excused from the production opportunity letter process unless they exceed 20 days off during the lookback period. Ex. 8, p. 191, ln 12 – 20; p. 200, ln 19 – p. 201, ln 18. The nine bereavement days Northover took in March 2023, did not cause her to exceed 20 total days off during the lookback period. *Id.* Further, Northover's director, Paul Dingman ("Dingman"), testified that Northover's time off in March did not affect her total closing numbers during the lookback period because it takes approximately 30 days for a loan to close. Ex. 7, p. 260, ln 17 – p. 261, ln 19.

According to Rocket Mortgage's production opportunity letter process, team members who receive two opportunity letters within six months are demoted or separated depending on their title. Ex. 19, pp. 2-3. Mortgage bankers with "Triple Crown" or "President's Club" titles are demoted, all other mortgage bankers are separated. *Id.* Due to Northover's receipt of a second production opportunity letter within six months, she was demoted from the "President's Club" to the "Executive" title. Ex. 20, p. 2. All other mortgage bankers within Senior Vice President, Michael Saleh's ("Saleh"), leadership chain who received a production opportunity letter in April 2023 and had received a production opportunity letter within six months, were demoted or separated as appropriate based on their title. Ex. 20, pp. 2-3; Ex. 21.

The April 2023 production opportunity letter required Northover to achieve

50% of her monthly loan application goal between April 1, 2023 and May 7, 2023. Ex. 20, p. 1; Ex. 22. Northover's initial goal was 17, and was prorated to 12, due to her time off. *Id.* Thus, to avoid separation, Northover was required to achieve at least six loan applications by May 7, 2023. On May 10, 2023, Northover was separated because she failed to meet her production requirement and only achieved four loan applications. Ex. 23A, 1:00 – 1:35; Ex. 23B, pp. 2-3. Northover's failure to meet the requirements of the April 2023 production opportunity letter was the sole reason for her termination. Ex. 24, p. 89, ln 18 – p. 91, ln 24.

**Northover's False Allegations Regarding her Transfer Request.**

In Northover's EEOC charge, she alleged that she was placed on a production opportunity letter in December 2022, successfully cleared that letter, and "was denied transferring to a different department, while similarly situated white employees were allowed to transfer." Ex. 25. That allegation was false. There is no evidence that Rocket Mortgage has ever allowed any team member to transfer to another department via THRIVE within six months of an opportunity letter.

In February 2023, Northover advised Dingman she was interested in a Director of DEI position posted on Rocket Mortgage's internal recruiting platform, which is called THRIVE. Ex. 7, p. 190, ln 19 – p. 191, ln 7. Dingman reached out to Shelby Mazur and endorsed Northover for the position. Ex. 26. However, team members are not eligible to transfer through THRIVE unless they "have consistently

met performance and behavior expectations for the past 6 months." Ex. 27, p. 2.

Dingman subsequently learned that Northover received a production opportunity

letter in December 2022 while on Regish's team and advised Northover she was not

eligible to apply for the role because of that. Ex. 7, p. 196, ln 4-10; Ex. 28.

Northover asked Lexie Kozempa ("Kozempa") (her team relations specialist)

whether Rocket Mortgage had made exceptions to the rule prohibiting THRIVE

transfers within six months of a production opportunity letter. Kozempa researched

that and advised Northover that she was not aware of any such exceptions having

been made for other team members. Ex. 29A, 2:00 - 2:42; Ex. 29B, p. 3.

**Northover's False Allegations Regarding Comparators.**

Northover's First Amended Complaint ("FAC") made the following vague

allegations that similarly situated white team members were treated better than her:

8. In December 2022, Plaintiff was placed on the first Opportunity
   Letter . . . It was alleged that Northover was in the bottom 10% of a
   15-person team where a white employee did not write any loans that
   month and Northover produced one; the white employee not given
   an OL. Northover produced over 80% of the goal to . . . fulfill the
   OL requirement . . . A white employee on the team did not hit the
   goal and was relieved of the OL.

11. Effective April 1, 2023, Plaintiff was demoted . . . The explanation
    was that Plaintiff had a second OL; a white male subject to two OLs
    was not similarly negatively affected.

12. A white employee has been subject to more than one OL under the
    same management of Plaintiff, and has been transferred . . .

14. Proof of pretext is that other white [team] members subject to OLs

requiring them to meet goals, who did not meet those goals, were not terminated, and were allowed to transfer.

18. A comparator white team member who . . . had two OLs within six months, was neither demoted prior to getting the second letter, nor terminated when he did not hit goal and allowed to transfer . . . .

ECF 8, Pg ID 20-23. Northover has no evidence to support her false allegations.

During Northover's deposition, she alleged three comparators were treated differently: ███████████████████████████████ and ████████ ██████ . Ex. 2, p. 226, ln 2 – p. 239, ln 13. Northover's counsel subsequently identified two additional team members as potential comparators: ████████ ███████████████████████████████ .

***Comparator #1 –*** ████████████

Northover testified that the white male referred to in paragraph 8 of her FAC was ███████ . Ex. 2, p. 226, ln 2-7. She then admitted ████████ had been placed on a production opportunity letter and her allegation to the contrary was false. *Id.,* p. 226, ln 23-25. Northover did not deny that ████████ was not treated any differently than her because he was placed on a production letter in November and terminated in December. *Id.,* p. 227, ln 19-22. ████████ was terminated on December 16, 2022 after failing to clear his November 2022 production opportunity letter. Ex. 15.

████████ performed better than Northover. Between February 2022 and November 2022 (the last full month prior to his termination), he exceeded his prorated monthly goal once and averaged 49.84% pace-to-goal. Ex. 30.

*Comparator #2 –* █████████

Northover testified that the last sentence of paragraph 8 of the FAC ("A white employee on the team did not hit the goal and was relieved of the OL.") referred to ███████. Ex. 2, p. 235, ln 11-15. Northover admitted that ████████ was not in the same position as her because Northover cleared her December 2022 opportunity letter, while ████████ did not and was demoted. *Id.*, p. 234, ln 8-18. Northover further admitted that she did not know if ████████ had received two opportunity letters within six months, and that ████████ did not transfer positions within six months of an opportunity letter. *Id.,* p. 234, ln 4-25. ████████ never received two production opportunity letters within six months. He received one in November 2022 and was demoted from Executive to Senior Banker after he achieved 60% of his prorated loan application goal in December 2022, which was enough to avoid separation, but not demotion. Exs. 31-33.

████████ performed significantly better than Northover. During the 13-months from February 2022 through February 2023, he met or exceeded his prorated loan application goal three times and averaged 85.93% pace-to-goal. Ex. 33.

████████ received another production opportunity letter in June 2023 and was separated in July 2023 after failing to clear that letter. Exs. 34-35.

*Comparator #3 –* █████████

Northover testified that the white team member referenced in paragraphs 11

and 12 of the FAC was ███. Ex. 2, p. 238; ln 13 – p. 239, ln 13. Northover falsely alleged that ███ was treated better than her because he was not demoted for receiving two opportunity letters within six months and was allowed to transfer after receiving an opportunity letter. ECF 8, Pg ID 20. ███ was not a President's Club mortgage banker like Northover. From May 2022 through March 2023, he held the lower title of Senior mortgage banker. Ex. 36. ███ received production opportunity letters in April 2021, July 2022, and March 2023, but never received two within six months. Exs. 37-39. ███ cleared his April 2021 and July 2022 production opportunity letters. Ex. 40.

When ███ received his March 2023 production opportunity letter, in lieu of proceeding with the letter, he accepted a ***demotion*** to an outbound dialing role that paid $20 per hour with no opportunity for incentive compensation. In January 2023, Rocket Mortgage began "building a new team of dialers . . . to help support the banking force by contacting clients and transferring them to mortgage bankers." Ex. 41, p. 000807. The option to accept the demotion was presented to all mortgage bankers with Senior and lower titles slated to receive a production opportunity letter in January 2023. Executive, Triple Crown, and President's Club bankers (like Northover) were not eligible for the dialer role. *Id.,* p. 000808. In exchange for accepting the demotion, the eligible team members would avoid being placed on the production letter and facing possible separation. *Id.*, p. 000809. In March 2023,

11

Rocket Mortgage needed additional outbound dialers and presented all mortgage bankers with Senior and lower titles slated to receive a production opportunity letter in March 2023 the same option to accept a demotion to the outbound dialer role. Ex. 42. ████ accepted that option. Ex. 36; Ex. 24, p. 130, ln 20-24.

████ performed significantly better than Northover. During the 13-months from February 2022 through February 2023, ████ met or exceeded his prorated monthly loan application goal four times and averaged 66.37% pace-to-goal. Ex. 40.

**Comparator #4 –** ████████

████████ received a production opportunity letter in July 2022 and cleared it. Exs. 43-44. That was the only production opportunity letter he received prior to voluntarily resigning in May 2023. Ex. 45.

████████ performed significantly better than Northover. During the 13-months from February 2022 through February 2023, he met or exceeded his prorated monthly loan application goal twice and averaged 75.66% pace-to-goal. Ex. 44.

**Comparator #5 –** ████████

Northover sought discovery regarding ████ as a potential comparator regarding her receipt of the April 2023 production opportunity letter. ████ had eight total closings in February and March 2023—twice as many as Northover who had four. Ex. 18, pp. 000850-1. For the April 2023 production opportunity letter cycle, team members with five total closings or less fell within the bottom 10% of

12

the specialty. Ex. 18; Ex. 20, pp. 2-3. ██████ did not receive a production opportunity letter in April 2023 because he was not in the bottom 10% of the specialty based on total closings in February and March 2023. *Id.*

On April 18, 2023, Northover surreptitiously recorded a conversation with Kozempa, Dingman, and Saleh. Northover asked why ██████ did not receive a production opportunity letter in April 2023. In response, Dingman explained that "for that timeframe it was closings that was used. ██████████ *had eight closings and you had four*." Ex. 46A, 5:45 – 6:10 (emph. added); Ex. 46B, p. 7.

## ARGUMENT

### I.   STANDARD OF REVIEW.

Summary judgment is proper where "the evidence . . . is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Inferences drawn from the evidence must be viewed in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the moving party shows the lack of a genuine issue of material fact, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### II.   NORTHOVER'S § 1981 CLAIMS ARE TIME BARRED.

Federal courts enforce contractual limitations periods as to claims under 42

U.S.C. § 1981. In *Thurman v. DaimlerChrysler,* the Court affirmed dismissal of a discrimination claim under Section 1981 based on "a six-month limitations period contained in an employment agreement." 397 F.3d 352, 358-359 (6th Cir. 2004), citing *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1988).

Northover's claims are based on alleged adverse actions on or before her separation on May 10, 2023. Northover's Employment Agreement required her to file suit "within 1 year after [her] claim arises."[2] Ex. 1, p. 3.

"Within 1 year" means 365 days beginning on (and including) the start date. In *Rust v. Quality Car Corral, Inc.,* the court interpreted the "within one year" statute of limitations in the Truth in Lending Act ("TLA") and held that claims filed on the anniversary date were untimely. 614 F.2d 1118, 1119-1120 (6th Cir. 1980).[3] The TLA states "[a]ny action under this section may be brought . . . ***within one year from***

---

[2] The limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir. 1984). The period runs from the date of each alleged adverse action.

[3] *Rust* was subsequently overruled because Rule 6(a) requires the date of the triggering event to be excluded in computing statutory time periods. *Bartlik v. United States DOL,* 62 F.3d 163, 166-167 (6th Cir. 1995) (en banc). But, *Bartlik* and Rule 6(a) are inapplicable because Rule 6(a) "appl[ies] in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time." Rule 6(a) does not apply to ***contractual*** time periods. *Curtis v. State Farm Fire & Cas. Co.,* 2014 U.S. Dist. LEXIS 114235, *3 (E.D. Mich. August 18, 2014) (Ex. 54) ("Rule 6(a) . . . does not include within its scope time periods specified in private contracts.").

*the date of occurrence*." 15 U.S.C. § 1640(e) (emph. added). The Court held that

the claim was untimely by a day:

> "[W]ithin one year from the date of occurrence" is straightforward. Nothing in that language supports judicial implication of a lapse in time between the 'occurrence' and the date the statute of limitations begins to run. . . . the alleged violations took place on July 1, 1976. . . . Rust had one year 365 days beginning on the date of the transaction to file his complaint. The last day of that year was June 30, 1977. Any other analysis would be inconsistent with the statutory language.

*Id.*, at 1119-1120. See also, *Schram v. United States,* 1987 U.S. Dist. LEXIS 15786,

*5 (E.D. Mich. August 11, 1987) (Ex. 49) ("If the limitations period is taken to begin

on August 3, 1985, the plaintiff would have been able to file suit within the six-

month period after August 3. That period ended on Sunday, February 2, 1986. Suit

filed on February 3, 1987 is simply one day late."). Northover was required to sue

"within 1 year after [her] claim arises." Ex. 1, p. 3. The last day "within 1 year" of

her separation was May 9, 2024. Northover's § 1981 claims (Counts I-II) filed on

May 10, 2024 are untimely.

## III.   COLLATERAL ESTOPPEL AND RES JUDICATA.

Under 28 U.S.C. § 1738, courts "give the same preclusive effect to state court

judgments that those judgments would be given in the courts of the State from which

the judgments emerged." *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 466 (1982).

Res judicata bars a subsequent case when the prior case was decided on the

merits, the cases involve the same parties, and the matter in the second case was, or

could have been, resolved in the first. *Adair v. Michigan*, 470 Mich. 105, 121 (2004). The doctrine bars all claims arising from the same transaction whether or not such claims were actually litigated. *Dart v. Dart*, 460 Mich. 573, 586-87 (1999).

Collateral estoppel, on the other hand, bars relitigation of an issue in a new action arising between the same parties when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in the prior proceeding. *Allen Park Retirees Ass'n v. City of Allen Park*, 329 Mich. App. 430, 444-45; 942 N.W.2d 618, 626 (2019).

The final judgments in *Northover I* and *II* were entered on January 10, 2023 and March 27, 2023. Exs. 4-5. The res judicata effect of those judgments bars Northover's claims based on alleged adverse actions that occurred before those judgments were entered because such claims involve the same parties and could have been brought in the prior cases. Specifically, Northover's claims based on the December 2022 production opportunity letter and the alleged denial of Northover's transfer requests are barred because they are based on events that allegedly took place prior to the final judgment entered in *Northover II.*

Collateral estoppel bars Northover's claims based on her assignment to a refinance mortgage banking role, and the alleged denial of her subsequent transfer requests. As the Court of Appeals correctly explained in *Northover II,* that issue was litigated and decided in *Northover I.* Northover attempted to relitigate that issue in

16

*Northover II,* and is now improperly attempting to relitigate it again for a third time.

## IV.   NORTHOVER FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES AS REQUIRED BY TITLE VII.

To properly exhaust administrative remedies under Title VII, the EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). "[A] Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 361 (6th Cir. 2010) (citations omitted). An EEOC charge is "liberally construed to encompass all claims reasonably expected to grow out of the charge." *Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 732 (6th Cir. 2006) (quotation marks and citation omitted).

In *Russell v. Three Pillars, Inc.,* the charge alleged a discriminatory demotion occurred on December 9, 2019. 2022 U.S. App. LEXIS 3565, *5 (6th Cir. February 7, 2022) (Ex. 50). The Court held that the plaintiff failed to exhaust administrative remedies because the demotion described in the charge "would not 'prompt the EEOC to investigate' the different, uncharged failure to promote claim." *Id.* At *13. Northover's charge alleged two adverse actions: (1) demotion for receiving two production opportunity letters in six months; and (2) denial of a transfer to a different department after receiving a production opportunity letter. Ex. 25, p. 1. Northover's charge is dated May 14, 2023, 4 days after her separation, but did not mention her separation at all. *Id.* She also did not claim the December 2022 or April 2023

17

production opportunity letters were discriminatory or retaliatory. *Id.* Under *Russell,* Northover's EEOC charge challenging demotion and denial of a transfer, would not prompt the EEOC to investigate completely different adverse actions—issuance of production opportunity letters and separation. Therefore, Northover's uncharged claims based on production opportunity letters and separation are not "reasonably expected to grow" from her EEOC charge, and such claims are barred.

## V.   NORTHOVER'S RETALIATION AND DISCRIMINATION CLAIMS HAVE NO MERIT.

Northover has no direct evidence of discrimination or retaliation.[4] Thus, the *McDonnell Douglas* framework applies. If a plaintiff establishes a prima facie case, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* at 793, quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.*

### A. Northover Cannot Establish a Prima Facie Case of Discrimination.

To establish a prima facia case of discrimination, a plaintiff must show: "(1) that he was a member of a protected class, (2) that he experienced an adverse

---

[4] To the extent that Northover's § 1983 retaliation and discrimination claims are not barred by the limitations period in the Employment Agreement, they are evaluated under the same standard as her Title VII claims. See, *Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475, 483-84 (6th Cir. 1989).

employment action, (3) that he was qualified for the position, and (4) . . . that he was treated differently than similarly situated employees." *Tepper v. Potter,* 505 F.3d 508, 515 (6th Cir. 2007).

"To establish a dispute of fact over whether a plaintiff was similarly situated to other employees outside her protected class, a plaintiff is 'required to prove that all of the relevant aspects of h[er] employment situation were nearly identical' to a specific individual." *Liebau v. Gossett,* 2023 U.S. Dist. LEXIS 34991, *16 (E.D. Mich. March 2, 2023) (Kumar, J.) (Ex. 51), quoting *Ercegovich v. Goodyear Tire & Rubber Co.,*154 F.3d 344, 352-53 (6th Cir. 1998). "[W]hen a termination is disciplinary in nature, the plaintiff must show that proposed comparators engaged in acts of 'comparable seriousness.'" *Id.,* quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006). "To make this assessment, courts look to several factors, such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.,* quoting *Ercegovich*, 154 F.3d at 352.

Northover cannot show that she "was treated differently than similarly situated employees" because she was not. All alleged comparators performed better than Northover—some significantly so. Rocket Mortgage terminated ███████ and ███████ based on their performance (despite that they performed better than

19

Northover), proving that Northover was treated the same as her peers.

**B. Northover Cannot Establish a Prima Facie Case of Retaliation.**

To establish a prima facia case of Title VII retaliation, a plaintiff must prove that: "(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff . . . ; and (4) there was a causal connection between the protected activity and the adverse employment action." *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000).

In *Liebau,* this Court found that the plaintiff could not establish the causation element of her prima facia case of retaliation because her employer disciplined her for "insubordination and unprofessional, disrespectful conduct" both before and after the protected activity, and the plaintiff's "termination came two months after Liebau's complaint, without any other evidence that the protected activity caused her termination." 2023 U.S. Dist. LEXIS 34991, *31. Northover cannot establish causation for the same reason. Northover's April 2023 production opportunity letter was delivered by Dingman (her director and immediate supervisor) and Saleh (her SVP). They were not aware of Northover's protected activity at that time. Ex. 7, p. 153, ln 16-22; Ex. 24, p. 78, ln 10 – p. 79, ln 16; Ex. 48, p. 47, ln 13-17. On April 18, 2023, eight days later, Northover advised Dingman and Saleh that she had filed an EEOC charge. Ex. 47. Northover's subsequent statement that she had filed an

EEOC charge does not prevent Rocket Mortgage from moving forward with its normal production opportunity letter process and separating Northover for failing to achieve at least 50% of her prorated monthly production goal as the process requires. See, *Beard v. AAA of Mich.*, 593 F. App'x 447, 451 (6th Cir. 2014) ("An employee cannot allege discrimination like a protective amulet when faced with the possibility that [her] preexisting disciplinary problems could lead to [her] termination."); and *McKinnon v. L-3 Communications Corp.*, 814 F. App'x 35, 45 (6th Cir. 2020) ("Evidence that an employer proceeded along lines previously contemplated, though not yet definitively determined, in taking its adverse employment action is no evidence whatever of causality."), quoting *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (internal quotation marks omitted).

### C. Northover's Poor Performance Justified all Alleged Adverse Actions.

Northover's poor performance justified the denial of transfers, production opportunity letters, and separation. *Stransberry v. Air Wis. Airlines,* 651 F.3d 482, 488 (6th Cir. 2011) (Poor performance is a legitimate, non-discriminatory reason for an adverse action). Northover does not dispute that her performance, by objective measures, was extremely poor. Ex. 2, p. 158, ln 4-12. Rocket Mortgage's procedures were consistently and fairly applied to all team members, and prohibited Northover from transferring, required her to receive production opportunity letters, and mandated separation for failure to clear the April 2023 production opportunity letter.

21

### D. Northover Cannot Establish Pretext.

Pretext is demonstrated "by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 393 (2008) (citations omitted). To survive summary judgment, a plaintiff must "produce sufficient evidence from which a jury could reasonably reject [the employer's] explanation" for the adverse action. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). "If an employer has an 'honest belief' in a nondiscriminatory basis upon which it has made its employment decision, . . . then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530-31 (6th Cir. 2012). "[A] plaintiff cannot rest solely on temporal proximity to establish pretext, 'suspicious timing' must be 'accompanied by some other, independent evidence.'" *Wyatt v. Nissan N. Am., Inc.,* 999 F.3d 400, 421 (6th Cir. 2021), quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). An employee's disagreement with the employer's "honest business judgment regarding [her] work does not create sufficient evidence of pretext in the face of the substantial evidence that [the employer] had a reasonable basis to be dissatisfied." *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1116 (6th Cir. 2001).

Northover had a documented track record of extremely poor performance that

was objectively worse than all alleged comparators, including ███ and ███

who were also terminated for poor performance. Therefore, she cannot possibly

prove pretext. This Court recently came to the same conclusion in *Chai v. GM LLC*:

> The extensive record of Chai's inadequate performance supplies ample
> evidence that GM made a reasonably informed and considered decision
> before terminating Chai. Without more, evidence of Chai's contrary
> opinion of the sufficiency of his work, no matter how insistent, does
> not create a genuine issue of material fact as to whether GM's stated
> reasons for terminating Chai's employment was pretext.

2023 U.S. Dist. LEXIS 250284, *18 (E.D. Mich. August 7, 2023) (Kumar, J.) (Ex.

52). Northover's argument regarding pretext is far weaker than Chai's because

Northover does not even offer her own opinion that she performed adequately. In

fact, Northover testified that she did not know and could not deny whether she was

"the lowest or the second lowest performing team member of all the team members

under Dingman during January, February, March, April, and May of 2023." Ex. 2,

p. 158, ln 4-12. Northover also admitted that to clear the April 2023 production

opportunity letter, she was told that she had to hit 50% of her goal by May 7, 2023

to avoid separation and she failed to do that. *Id.,* p. 173, ln 22 – p. 174, ln 3.

## VI.   NORTHOVER'S FMLA CLAIM HAS NO MERIT.

"To establish an FMLA-interference claim, a plaintiff must demonstrate: (1)

she is an eligible employee; (2) the defendant is an employer under the statute; (3)

she was entitled to leave under the FMLA; (4) she gave notice of her intention to

take leave; and (5) the employer denied the FMLA benefits to which she was

entitled." *Hunt v. Thorp,* 2024 U.S. App. LEXIS 6472, *25-26 (6th Cir. 2004) (Ex. 53), citing *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007).

Northover has no evidence Rocket Mortgage denied any request for FMLA benefits to which she was entitled. Northover requested, and Rocket Mortgage approved, intermittent FMLA leave in January 2023. That permitted Northover to take days off as needed without further requests or approvals. Northover used seven FMLA days between February 24, 2023 and May 9, 2023. There is no evidence that Northover made any other requests for FMLA benefits, or that Rocket Mortgage denied any such requests. Therefore, Northover's FMLA interference claim fails.

Northover's FMLA retaliation claim fares no better. To make a prima facie case of FMLA retaliation, Northover must show: "(1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Redlin v. Grosse Pointe Pub. Sch. Sys.,* 921 F.3d 599, 616 (2019). Northover cannot demonstrate a causal connection between any adverse employment action and her intermittent FMLA leave. To clear her April 2023 production opportunity letter, Northover was required to achieve at least 50% of her monthly loan application goal during the 37-day period from April 1, 2023 through May 7, 2023.

Northover's initial goal was 17 and was prorated to 12 due to her FMLA and other days off. Northover only achieved four loan applications by May 7, 2023. Northover's three FMLA days during the 37-days between April 1, 2023 and May 7, 2023 did not make it more difficult for Northover to clear the April 2023 production opportunity letter because her goals were prorated for her time off. Northover also has not shown that she would have achieved two additional loan applications if she was given an extra three days to meet 50% of her goal. Northover was separated on May 10, 2023, and still had only achieved four loan applications.

Northover also cannot show pretext.[5] As explained above, Northover cannot establish pretext because Northover's extremely poor performance was worse than all of the alleged comparators and justified her termination.

## <u>CONCLUSION</u>

For the foregoing reasons, Rocket Mortgage respectfully requests that the Court GRANT this Motion and enter a final judgment in favor of Rocket Mortgage.

<div style="margin-left:40%;">

Respectfully submitted,
/s/ Jeffrey M. Thomson
MORGANROTH & MORGANROTH, PLLC
JEFFREY B. MORGANROTH (P41670)
JEFFREY M. THOMSON (P72202)
PAMELA K. BURNESKI (P82039)
Attorneys for Defendant

</div>

Dated: January 8, 2026      jthomson@morganrothlaw.com

---

[5] Northover must show pretext because her FMLA retaliation claim is "subject to the burdenshifting framework outlined in *McDonnell Douglas*." *Clemons v. Hillshire Brands Co.,* 2024 U.S. App. LEXIS 8856, *7 (6th Cir. 2024) (Ex. 55).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 8, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send electronic notification of such filing to all counsel of record.

MORGANROTH & MORGANROTH, PLLC

/s/ Jeffrey M. Thomson
JEFFREY M. THOMSON (P72202)
Attorneys for Defendant
344 N. Old Woodward Ave., Ste. 200
Birmingham, MI 48009
(248) 864-4000
jthomson@morganrothlaw.com